Argued and submitted June 10, reversed; referee's order reinstated
December 1, 1982, reconsideration denied January 7, petition for review allowed
February 8, 1982 (294 Or 491)
See 296 Or 139, 675 P2d 157 (1984)

In the Matter of the Compensation of
Daniel Leary, Claimant.

LEARY,
*Petitioner,*

*v.*

PACIFIC NORTHWEST BELL,
*Respondent.*

(WCB No. 80-01939, CA A23101)

653 P2d 219

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Katherine O'Neil, Portland, argued the cause for respondent. With her on the brief were William H. Replogle, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

■   Claimant appeals an order of the Workers' Compensation Board that reversed a referee's order holding his occupational disease claim compensable. The dispositive issue is whether claimant's physical disabilities arose out of and in the scope of his employment. ORS 656.802(1)(a).[1] We review *de novo,* ORS 656.298(6), and reverse.

Claimant, age 54 at the time of the hearing, had been employed by Pacific Northwest Bell (PNB) for 33 years installing and repairing telephones. In December, 1977, he began experiencing headaches, upset stomach and diarrhea. At the hearing he testified that he was under considerable stress at work because of the constant turnover of supervisors, many of whom were younger than he and had less experience; that his supervisors gave conflicting instructions and instituted varying work methods; that they supervised his work too closely, which he considered unnecessary given his experience; that they harassed him about his production, which he believed to be about the same as other employes; and that they criticized him for refusing to work overtime, which he did not believe was mandatory. Several of claimant's supervisors testified at the hearing or by affidavit that he produced less than other employes, was easily agitated, disliked authority, had difficulty adjusting to changing policies and felt persecuted by them.

In December, 1977, claimant told Dr. Howell that he was experiencing stress at work and was particularly concerned about the company's hiring of young, inexperienced women and placing them in supervisory roles ahead of older, more experienced men. The doctor tentatively diagnosed a duodenal ulcer. When treatment failed to remedy claimant's intestinal condition, he was hospitalized in February, 1978, for a gastroscopy which revealed duodenitis, peptic ulcer and peptic esophagitis. On Dr. Howell's advice, he took a three-month leave of absence. Dr. Howell informed PNB that claimant's condition "is directly

---

[1] ORS 656.802(1)(a) defines "occupational disease" as:

"Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

aggravated by his work situation and a leave of absence is considered imperative." Claimant's condition improved, and he returned to work in May, 1978.

Claimant's intestinal problems recurred. In December, 1979, he contacted Dr. Parent, an internist, and related that he was dissatisifed with his job and was undergoing great tension at work. Dr. Parent diagnosed hypertension, diarrhea with possible ulcerative colitis, duodenitis and reflux esophagitis with persistent ulceration. He concluded that "[a]ll [claimant's] problems appear to be tension or stress related." Although he did not believe claimant's work directly caused his problems, he concluded that "his work situation and attitude towards it are directly aggravating these problems."

Claimant filed a claim for occupational disease. PNB denied that claim. Dr. Parent wrote PNB:

"It is my opinion that a dominant factor in this patient's life is his job stress. I feel his hypertension is probably on an essential basis, however, as you are aware stress does affect this adversely as it does irritable bowel or colitis. It is also a factor in increasing acid which is a factor in the etiology of dueodenitis and esophagitis. * * *"

At PNB's request, claimant was examined by Dr. Colbach, a psychiatrist, who reported:

"What I think we have here is a man who is really not smart enough and does not have the personality flexibility to cope well with change. For many years, he apparently did all right. Now, at a time when he is aging and slowing down in many ways, he is confronted at the same time with an increasingly complex and changing society and work situation. He feels unappreciated, alienated, and angry. He develops psychosomatic symptoms. He is too limited to really understand what is going on, so he projects most of the blame on certain individuals in his work environment.

"It doesn't appear that his work has forced him into any particularly stressful situations. But his selective perceptions of what is going on at work do cause him distress and do, in turn, contribute to his psychosomatic problems. These selective perceptions, of course, are unconscious results of his intellectual and personality limitations.

"I have described a complex situation. Whether this is properly compensable under workers' compensation law is

impossible for me to say. It is more of an administrative law decision than a medical one.

"I don't think any particular psychiatric intervention is indicated here.

" * * * * *

"If I had to give claimant a particular diagnostic label, I would say that he has elements of what has been termed 'the paranoid personality,' although he isn't quite so bad as to deserve the full implications of this label."

The referee concluded that claimant "truly believed he was being harassed" at work and that his "reactions to his perceived experiences at work did cause him stress and anxiety which directly resulted in his need for treatment and care of his resulting physical problems." The Board concluded that claimant was subjected to normal and reasonable supervision and that his "adverse psychological and physical reaction" to that supervision did not arise within the scope of his employment. The Board observed that his stress factors, young supervisors and women supervisors, were "really factors which any person claimant's age encounters everywhere."

■     An occupational disease need not "be caused or aggravated solely by the work conditions." It is sufficient "[i]f the at-work conditions, when compared to the nonemployment exposure, are the major contributing cause of the disability." *SAIF v. Gygi,* 55 Or App 570, 574, 639 P2d 655, *rev den* 292 Or 825 (1982). The question is whether claimant's stress, which appears to result primarily from his perception of the way he is treated by his supervisors, can be said to arise in the scope of his employment.

■     Where an employe is deviating from expected job performance standards, supervision directed at improving the desired performance falls within the scope of employment because it is inevitable in the employment relationship. If that kind of supervision is the nexus linking the psychiatric condition to the job, the claim arises out of and in the course of employment within the meaning of ORS 656.802(1)(a). An adverse psychological reaction to supervision directed at improving job performance is within the scope of employment, and an adverse reaction to it is a risk of employment. It is unnecessary that claimant prove that

his stress resulted from harassment or other illegitimate supervision, because that would inject the element of fault into the proceeding. Neither is the claim precluded because the incidents contributing to claimant's stress might not have adversely affected an average worker. *McGarrah v. SAIF,* 59 Or App 448, 651 P2d 153 (1982); *Maddox v. SAIF,* 59 Or App 508, 651 P2d 180 (1982).

In *SAIF v. Gygi, supra,* 55 Or App at 578, we held that a self-employed attorney who began to drink alcohol excessively and abuse over-the-counter drugs because of the pressures of his work had a compensable occupational disease. We stated that, "[a]lthough claimant, being self-employed, may have been the author of his own downfall, his condition arose because of his response to the demands of his law practice."

Here, claimant's stress is similarly the result of his response to his job. In addition to the stress factors noted by the Board, claimant also identified stress resulting from conflicting orders as a consequence of the turnover of supervisors, as well as what he perceived to be harassment over his production and refusal to work overtime. It is not dispositive whether claimant was in fact harassed. What is decisive is whether he believed that he was being harassed and whether that belief was the major contributing cause of his stress and resulting disability.

Dr. Colbach noted that claimant's "selective perceptions, of course, are unconscious results of his intellectual and personality limitations." The Supreme Court has stated that for purposes of determining compensability under the Workers' Compensation Act, the employer takes the workers as he finds them with all their inherent defects. *Weller v. Union Carbide,* 288 Or 27, n 5, 602 P2d 259 (1979). It is not important that the stress affecting claimant was not unusual or excessive. It exacerbated his disabling intestinal disorders. The medical evidence supports a conclusion that claimant suffers a greater and different degree of stress when he is at work. *See James v. SAIF,* 290 Or 343, 350, 624 P2d 565 (1981). His medical records establish that his condition improved significantly during his leave of absence from PNB. There is no evidence that he suffered from any unusual stress from nonemployment sources. we

find it significant that claimant was employed by PNB for more than 33 years and that it has been only in the last few years that he has been unable to cope with his problems at work.[2] Thus, notwithstanding that his work-related stress appears largely to be his own reaction to his working conditions, *see SAIF v. Gygi, supra,* 55 Or App at 578, we conclude that it is the major contributing cause of his disability and that it is therefore compensable.

Reversed; referee's order reinstated.

---

[2] Before this time claimant had suffered a back injury that intermittently causes him discomfort that is unrelated to his present claim.