Argued and submitted April 7, remanded to Court of Appeals December 20, 1983

In the Matter of the Compensation of
Daniel Leary, Claimant.
LEARY,
*Respondent on review,*
*v.*
PACIFIC NORTHWEST BELL,
*Petitioner on review.*
(No. 80-01939, CA A23101, SC 29169)
675 P2d 157

Mildred J. Carmack, Portland, argued the cause for petitioner on review. On the petition and brief were Katherine H. O'Neil, William H. Replogle and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Robert K. Udziela, Portland, argued the cause for respondent on review. With him on the response to the petition and brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Keith D. Skelton, Portland, filed a brief amicus curiae on behalf of himself and the Association of Workers' Compensation Defense Attorneys.

Darrell E. Bewley, Appellate Counsel, Salem, filed a brief amicus curiae on behalf of the State Accident Insurance Fund.

Stephen R. Frank of Tooze, Kerr, Marshall & Shenker, Portland, filed a brief amicus curiae on behalf of The Hartford Insurance Group.

Before Lent, Chief Justice,** and Linde, Peterson, Campbell, Carson and Jones, Justices.

JONES, J.

---

** Justice Lent was Chief Justice when case was argued; Justice Peterson was Chief Justice when decision rendered.

## JONES, J.

The claimant seeks workers' compensation benefits for physical disease and disorders allegedly arising out of on-the-job stressful conditions and events. The Court of Appeals reversed the Workers' Compensation Board and allowed an award of benefits. We allowed review in this case and *McGarrah v. SAIF*, 296 Or 145, 675 P2d 159 (1983), to consider these claims for stress-related occupational disease.

We quote the facts and testimony as related by the Court of Appeals:

"Claimant, age 54 at the time of the hearing, had been employed by Pacific Northwest Bell (PNB) for 33 years installing and repairing telephones. In December, 1977, he began experiencing headaches, upset stomach and diarrhea. At the hearing he testified that he was under considerable stress at work because of the constant turnover of supervisors, many of whom were younger than he and had less experience; that his supervisors gave conflicting instructions and instituted varying work methods; that they supervised his work too closely, which he considered unnecessary given his experience; that they harassed him about his production, which he believed to be about the same as other employes; and that they criticized him for refusing to work overtime, which he did not believe was mandatory. Several of claimant's supervisors testified at the hearing or by affidavit that he produced less than other employes, was easily agitated, disliked authority, had difficulty adjusting to changing policies and felt persecuted by them.

"In December, 1977, claimant told Dr. Howell that he was experiencing stress at work and was particularly concerned about the company's hiring of young, inexperienced women and placing them in supervisory roles ahead of older, more experienced men. The doctor tentatively diagnosed a duodenal ulcer. When treatment failed to remedy claimant's intestinal condition, he was hospitalized in February, 1978, for a gastroscopy which revealed duodenitis, peptic ulcer and peptic esophagitis. On Dr. Howell's advice, he took a three-month leave of absence. Dr. Howell informed PNB that claimant's condition 'is directly aggravated by his work situation and a leave of absence is considered imperative.' Claimant's condition improved, and he returned to work in May, 1978.

"Claimant's intestinal problems recurred. In December, 1979, he contacted Dr. Parent, an internist, and related that

he was dissatisfied with his job and was undergoing great tension at work. Dr. Parent diagnosed hypertension, diarrhea with possible ulcerative colitis, duodenitis and reflux esophagitis with persistent ulceration. He concluded that '[a]ll [claimant's] problems appear to be tension or stress related.' Although he did not believe claimant's work directly caused his problems, he concluded that 'his work situation and attitude towards it are directly aggravating these problems.'

"Claimant filed a claim for occupational disease. PNB denied that claim. Dr. Parent wrote PNB:

'It is my opinion that a dominant factor in this patient's life·is his job stress. I feel his hypertension is probably on an essential basis, however, as you are aware stress does affect this adversely as it does irritable bowel or colitis. It is also a factor in increasing acid which is a factor in the etiology of dueodenitis *[sic]* and esophagitis. * * *'

At PNB's request, claimant was examined by Dr. Colbach, a psychiatrist, who reported:

'What I think we have here is a man who is really not smart enough and does not have the personality flexibility to cope well with change. For many years, he apparently did all right. Now, at a time when he is aging and slowing down in many ways, he is confronted at the same time with an increasingly complex and changing society and work situation. He feels unappreciated, alienated, and angry. He develops psychosomatic symptoms. He is too limited to really understand what is going on, so he projects most of the blame on certain individuals in his work environment.

'It doesn't appear that his work has forced him into any particularly stressful situations. But his selective perceptions of what is going on at work do cause him distress and do, in turn, contribute to his psychosomatic problems. These selective perceptions, of course, are unconscious results of his intellectual and personality limitations.

'I have described a complex situation. Whether this is properly compensable under workers' compensation law is impossible for me to say. It is more of an administrative law decision than a medical one.

'I don't think any particular psychiatric intervention is indicated here.

'* * * * *

'If I had to give claimant a particular diagnostic label, I would say that he has elements of what has been termed "the paranoid personality," although he isn't quite so bad as to deserve the full implications of this label.' "

The Court of Appeals found that claimant suffered a greater and different degree of stress when he was at work, that there was no evidence he suffered from any unusual stress from non-employment sources, and that his work-related stress was the major contributing cause of his disability, notwithstanding that it was largely due to his own reaction to his working conditions. Compensation was allowed.

The Court of Appeals based its conclusion that the work-related stress was the major contributing cause of the claimant's disability on the subjective test we rejected in *McGarrah v. SAIF, supra.* The Court of Appeals stated the "work-related stress appears largely to be his own reaction to his working conditions" and quoted Dr. Colbach's testimony:

"It doesn't appear that his work has forced him into any particularly stressful situations. But his selective perceptions of what is going on at work do cause him distress * * *."

This occupational disease case is remanded to the Court of Appeals to apply the objective standard set forth in *McGarrah v. SAIF, supra.*