Argued and submitted April 13, 1983, affirmed January 25, 1984

In the Matter of the Compensation of
Virginia S. Shilling, Claimant.

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner,*

*v.*

## SHILLING,
*Respondent.*

(77-07450; CA A26282)

675 P2d 1081

Darrell E. Bewley, Appellant Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for petitioner.

John M. Silk, Eugene, argued the cause for respondent. On the brief were Michael Strooband, and Bischoff & Strooband, P.C., Eugene.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

SAIF appeals an order of the Workers' Compensation Board holding that claimant's emotional disability is a compensable occupational disease. This is the second appeal in this case. In the first, we affirmed the Board's original order finding claimant's disability to be compensable. *Shilling v. SAIF,* 46 Or App 117, 610 P2d 845 (1980). The Supreme Court granted review and remanded, 290 Or 301 (1981), and we in turn remanded to the Board for further proceedings. 51 Or App 2. On remand the parties did not present further evidence, and the Board ruled on the existing record that the condition was compensable. We affirm.

As set forth in our previous opinion in this case, claimant worked for the Department of Motor Vehicles in Coquille, where her duties included

"* * * changing automobile titles, processing drivers' licenses, administering vision and written driver examinations, handling vehicle registration, answering telephones, ordering office supplies, taking inventory and completing required reports. * * *" 46 Or App at 119.

Over the years that she worked there, the increase in area population caused the workload to increase. In July, 1976, the photographic driver's license was introduced, and the time required to prepare a license increased. As we described claimant's disability:

"In the fall of 1976, claimant began experiencing chest pain. The pains occurred when she was very busy at work. She did not consult a doctor at that time because the pains abated when her job became less stressful. The frequency and severity of the pains continued to increase, and on August 29, 1977, she was examined by Dr. Nolan. On October 17, 1977, claimant was admitted to the hospital, complaining of a three day history of increasing chest pain. The diagnosis was coronary artery disease. She was released after four days. On October 25, 1977, claimant was again hospitalized because of chest pains. Tests indicated no organic cardiac problems. She was referred to the South Coast Psychiatric Associates. * * *" 46 Or App at 119-20.

Claimant stated that she was "tense, exhausted, cried a lot and had extreme chest pains" and was afraid to go out in crowds or drive her automobile. 46 Or App at 120.

SAIF contends that the claim is not compensable because claimant's workload was not actually excessive and she should not be compensated for a condition resulting from her merely "perceived overwork" or "perceived stress." SAIF also argues that off-the-job conditions were the primary cause of claimant's disability.

In *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981), the Supreme Court discussed which on-the-job causes, if any, could render a mental disability compensable. The issue of whether and the extent to which such mental disorders are compensable was not considered by the Supreme Court until its recent opinion in *McGarrah v. SAIF,* 296 Or 145, 675 P2d 159 (1983), which rejected what it called the "strictly subjective causal nexus" standard by which some courts had found that a

> "* * * claimant is entitled to compensation if it is factually established that claimant *honestly perceives* some event occurred during the ordinary work of his employment 'caused' his disease. This standard applies where the claimant alleges a disease resulting from mental stimulus and honestly, even though mistakenly, believes that he is disabled or impaired due to that work-related event and therefore cannot resume his normal employment." 296 Or at 164.

As an example of the application of such a standard, the Supreme Court cited *Deziel v. Difco Lab,* 403 Mich 1, 268 NW2d 1 (1978), where, because of a long-standing personality defect, an auto assembly line worker was disabled by worry that the cars being assembled were not safe, when there was no objective evidence to substantiate the fear. The Supreme Court stated:

> "* * * A worker's misperception of reality does not flow from any factual work condition. We disagree with the Michigan Supreme Court standard set forth in *Deziel* that all that is needed for compensation for stress-induced physical disease or mental disorders is a strictly subjective causal nexus based upon a worker's honest perception. A worker may honestly believe that the employer plans to kill him and as a result of that fear cannot work, but if that belief emanates only from the worker's own paranoia and there was no evidence the employer had any such plan, no stress condition factually existed on the job and the resulting impairment would not be compensable.* * *" 296 Or at 164.

"* * * [S]tress-caused claims for benefits arising out of mental and physical disorders are compensable if they flow from the conditions of the worker's employment, provided causation * * * has been proven. We all know that stress may flow from work conditions. However, the on-the-job stress conditions causing the disorders must be real. That is, the events and conditions producing the stress must, from an objective standpoint, exist in reality. A worker's inability to keep up the pace of the job, *Carter v. General Motors Corp.*, 361 Mich 577, 106 NW2d 105 (1960), is real stress. * * *" 296 Or at 163-64.[1]

■ The Supreme Court also disapproved a standard some courts call "objective" (which might perhaps be called the "average worker standard"), under which a mental disability caused by stress is not compensable if the pressures encountered in the employment are no greater than those on other workers in the same kind of work. *See, e.g., Sloss v. Industrial Commission,* 121 Ariz 10, 588 P2d 303 (1978). The court did agree with the analysis in *Royal State Nat'l Ins. v. Labor Bd.,* 53 Haw 32, 487 P2d 278 (1971), noting that that court took the position that "a person may succumb to the pressures of work even though he is not under any unusual exertion or strain." 296 Or at 151. As the Supreme Court stated in *James v. SAIF, supra:*

"* * * In injuries or diseases other than mental illness, the inquiry is not would an average worker have incurred the injury or disease? The question is did the claimant worker sustain the injury or disease? Workers' compensation is covered by statute and there is nothing in the Oregon Workers' Compensation Law that would distinguish between the test for mental illness and other kinds of injury or disease." 290 Or at 347.

Thus the stress-causing work condition must be "objective" in the sense that the condition must be real, as opposed to imaginary; but its effect on the worker is nevertheless measured in terms of the individual worker's actual reaction rather than by whether it would cause disability in the average worker.

In its order on remand the Board stated:

---

[1] At times in its opinion, the Supreme Court speaks in terms of "real stress"; it might have been more accurate to refer to "real *stress-causing* conditions."

"*  *  * [C]laimant perceived a significant increase in her workload. Other evidence documents that there was some increased workload between about mid-1976 and late 1977; claimant's perception of the gravity of the situation, however, exceeded the objective reality of the situation. *  *  *

"*  *  * [H]ere claimant's perception of her increased workload was out of touch with the reality of her increased workload. *  *  *"

The Board concluded that under the standards expressed in our opinion in *McGarrah,* it did not matter whether claimant's subjective perceptions were "out of touch with reality" and found the claim compensàble.

■       SAIF argues that claimant's "perceived stress" or "perceived overwork" cannot legally cause a compensable mental disability:

"It is clear that perceived stress cannot arise out of the employment. Such stresses instead arise out of the worker. Such perceptions cannot be a risk of doing the employer's task. To arise out of the employment, the stressor must be an actual one which is a part of the particular employment."

SAIF also argues that claimant should be required to prove that she was, in fact, overworked and cites statistics comparing the workload of her office with other DMV offices. It is true that the standard to be applied is different following the Supreme Court's *McGarrah* opinion. Now a mental disability caused by an imaginary condition at work could not be compensable. However, the Board and SAIF frame the issue here incorrectly when they discuss the imaginary nature of claimant's "overwork." The question is not whether claimant's perception of overwork was accurate, or whether claimant was overworked as judged by a standard of what would constitute overwork to the average person on her job. The question is whether there were stress-causing pressures on her job that were "real." In applying the standards expressed in *McGarrah* and *James,* we conclude that the causes of claimant's on-the-job stress are the kind that do not preclude a claim based on the resulting mental condition.

As we noted in our previous opinion in this case, claimant was frequently required to tend the office alone and contend with long lines of people waiting for assistance and often had to work through her morning and afternoon breaks

and sometimes into her lunch hour. Those are "real" pressures, and claimant's reactions to them were not reactions to mere imaginary conditions. That she was more susceptible to the conditions than others might be, that she characterized them as "overwork" when someone else would not have or that they were more stressful for her does not preclude her claim.

■ We must still address the issue of whether claimant's on-the-job pressures, when compared with off-the-job conditions, were the "major contributing cause" of her mental disorder, *McGarrah v. SAIF, supra,* 296 Or at 166; *SAIF v. James,* 61 Or App 30, 33, 655 P2d 620 (1982), and whether her off-the-job conditions are "substantially the same as [those] on the job *when viewed as a cause* of the particular kind of disease claimed as an 'occupational disease,' " *James v. SAIF, supra,* 290 Or at 350. (Emphasis in original.) SAIF argues that claimant was under stress from off-the-job conditions and that that caused her illness. In our previous opinion, we concluded that there was no evidence that the alleged off-the-job pressures caused her illness, and we do not alter that finding here.

Although our analysis is different, we conclude that the Board did not err in finding this claim compensable.

Affirmed.