Submitted on remand December 20, 1983, affirmed April 18, 1984

In the Matter of the Compensation of
Daniel Leary, Claimant.

LEARY,
*Petitioner,*

*v.*

PACIFIC NORTHWEST BELL,
*Respondent.*

(80-01939; CA A23101)

680 P2d 5

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Katherine O'Neil, Portland, argued the cause for respondent. With her on the brief were William H. Replogle, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This case was remanded by the Supreme Court, 296 Or 139, 675 P2d 157 (1983), to apply the objective standard of *McGarrah v. SAIF*, 296 Or 145, 675 P2d 159 (1983).[1] In our former opinion, 60 Or App 459, 465, 653 P2d 1293 (1982), we stated that "notwithstanding that his work-related stress appears largely to be his own reaction to his working conditions * * * we conclude that it is the major contributing cause of his disability and that it is therefore compensable." Our conclusion was based on a *subjective* test that was rejected by the Supreme Court in *McGarrah.*

In *Elwood v. SAIF*, 67 Or App 134, 137, 676 P2d 922 (1984), we found these questions to be relevant to a determination of the compensability of a mental stress claim:

"1. What were the 'real' events and conditions of plaintiff's employment?

"2. Were those real events and conditions capable of producing stress when viewed 'objectively,' even though an average worker might not have responded adversely to them?

"3. Did plaintiff suffer a mental disorder?

"4. Were the real stressful events and conditions the 'major contributing cause' of plaintiff's mental disorder?"

*See McGarrah v. SAIF, supra; SAIF v. Gygi*, 55 Or App 570, 574, 639 P2d 655, *rev den* 292 Or 825 (1982). We review *de novo*, ORS 656.298(6), and, in the light of *McGarrah*, now find that the claim is not compensable.

While some of the stress-causing conditions were real, others were imagined. Claimant was criticized by a number of supervisors for failing to keep his production up and for his resistance to working overtime. In *McGarrah v. SAIF, supra*, 296 Or at 164, the Supreme Court noted that an

---

[1] In *McGarrah v. SAIF*, 296 Or 145, 165, 675 P2d 159 (1983), the Supreme Court stated:

"The stressful conditions must actually exist on the job. That is, they must be real, not imaginary. The views of an average worker or average person or the perceptions by the claimant may be relevant, but are not determinative. The existence of legal cause of stress-related occupational disease must be determined objectively." (Footnotes omitted.)

*See also Elwood v. SAIF*, 67 Or App 134, 676 P2d 922 (1984); *SAIF v. Shilling*, 66 Or App 600, 675 P2d 1081 (1984).

employe's inability to keep pace with the job is "real stress."[2] Claimant was also reprimanded for arriving late and leaving early. One supervisor criticized him for going to a doctor without previously informing her so that she could make adjustments in her crew. Claimant also had difficulty adjusting to frequent changes in supervisors and changing work policies. When viewed objectively, those events could produce stress, even though an average worker might not have responded adversely to them.

However, much of claimant's stress was the result of his unfounded perception that his employer was subjecting him to harassment and excessive supervision. He admitted that he was of a suspicious nature and that he felt the company at times tried to "mess with him." His supervisors testified that he was difficult to get along with, constantly challenged their authority and complained that he had been mistreated by the employer. They concluded that he had been treated no differently than other employes and that at times he was treated more leniently because of his irascible nature.

We stated in our former opinion, *supra,* 60 Or App at 463, that claimant's stress "appears to result primarily from his perception of the way he is treated by his supervisors * * *." Claimant told his doctors and the referee that he was affected by two principal stress factors: younger supervisors and female supervisors. The record shows, however, that, except for one female supervisor, all of claimant's supervisors were male and that all of his supervisors, although younger than he, had, with one exception, substantial supervisory experience. Moreover, claimant had expressed resentment against all of his supervisors. The stressful conditions that he asserted, supervisors without previous experience, harassment by supervisors, a company practice of hiring inexperienced young women as supervisors, were not in fact real.[3]

---

[2] It might have been more accurate to describe the worker's situation as a "real stress-causing condition." *See SAIF v. Griffith,* 66 Or App 709, 712 n 2, 675 P2d 1092 (1984).

[3] Claimant's resentment against advancement of young people and women, to the extent that such advancement can be deemed a real stress factor, is not a stress factor to which claimant "is not ordinarily subject or exposed other than during a period of regular actual employment." *See* ORS 656.802(1)(a). As the board stated:

"* * * [B]y the time an individual is in his 50's, as is claimant, a large and growing proportion of the population is younger. Many of these younger people

We conclude that most of the events and conditions of claimant's employment that produced stress were imagined. *See Elwood v. SAIF, supra,* n 3.

The only medical examiner who directly addressed the source of claimant's disability was Dr. Colbach. He concluded:

"It doesn't appear that his work has forced him into any particularly stressful situations. But his selective perceptions of what is going on at work do cause him distress and do, in turn, contribute to his psychosomatic problems. These selective perceptions, of course, are unconscious results of his intellectual and personality limitations."

Claimant's treating physicians both indicated that his health problems were work-related. However, they focused on his physical infirmities. They were not primarily concerned with his mental condition; they did not independently examine him to determine the extent to which his reactions to employment were the result of his misperceptions of reality, nor was it expected that they would do so. From the record, it appears that they simply accepted his opinion concerning the cause of his disability. *See Foley v. SAIF,* 29 Or App 151, 159, 562 P2d 593 (1977). The board's order denying compensation is affirmed.

Affirmed.

---

have various positions of authority. This is in no way unique to the work environment. Furthermore, the phenomenon of women in positions of authority is not limited to the telephone company, but rather, in our changing contemporaneous society, is increasingly common. Claimant undoubtedly had difficulty coping with his own aging process and the changing world around him, but these stress factors he claims caused an occupational disease are really factors which any person claimant's age encounters everywhere. * * *"

Claimant's stressful exposure to young people and women on the job was more imagined than real. To the extent, however, that his disability is the result of his exposure to young people and women in positions of authority, those are conditions that he faces off the job as well as on the job.