Argued and submitted April 19, 1985, reversed and remanded February 26, reconsideration denied May 9, petition for review denied June 3, 1986 (301 Or 193)

In the Matter of the Compensation of
Clara J. Petersen, Claimant.

PETERSEN,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(WCB 83-05423; CA A33543)

714 P2d 1108

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief were Nicholas M. Sencer and Malagon & Associates, Eugene.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

## ROSSMAN, J.

This is an occupational disease claim in which claimant seeks review of a Workers' Compensation Board decision which affirmed the referee's determination that claimant's mental disorder is not compensable. On *de novo* review, we reverse.

In February, 1983, claimant, a billing clerk for the city of Myrtle Point, filed a claim form indicating that she was unable to work due to "stress, job harassment and undermining of the city administrator." The claim was denied.

Claimant testified at the hearing that her troubles at work started in September, 1981, when a new city administrator was hired for the purpose of reorganizing the city offices. He changed her job description, took away certain of her responsibilities and found fault with her work. He ignored her suggestions and, according to her uncontradicted testimony, placed unrealistic expectations on her. He did not allow her to work at home while she was sick, but made her take sick leave. She testified that there was a great deal of tension in the office.

Claimant began receiving treatment for stress from Dr. Reed Gurney and Dr. E. R. Gurney in January, 1982. In January, 1983, they diagnosed "situational stress reaction" and "chronic anxiety and depression" and advised claimant to stop working, because they believed that her job was creating stress and making it difficult for her to function. That is when claimant filed her claim. She did not return to work. Her position was eliminated in June of that year.

Claimant was referred by SAIF to Dr. Holland for a psychiatric examination. He performed psychological tests which he stated indicated a moderate level of depression and a "profile which is diagnostic of paranoid type schizophrenia." He concluded, however, that there was no clinical evidence of schizophrenia and that claimant's mental status demonstrated no significant abnormalities. Holland noted that claimant had other stresses in her life. He also found her to have "a significant level of interpersonal dysfunction," as indicated by a history of six marriages. In his opinion, claimant's predisposition to psychiatric symptoms was the major contributing cause of her difficulties but he would express no

opinion as to how her work might have affected her problems. The doctors Gurney referred claimant to Dr. Martin, a psychiatrist. He disagreed with Holland's conclusion that claimant is predisposed to psychological problems and reported in September, 1983, that claimant's on-the-job exposure to stress was a major contributing cause of her psychological condition.

The referee determined that claimant had failed to prove that the real events and conditions of her work had caused the problems. In the opinion portion of her order, the referee stated:

"It would appear from the record that the majority of the claimant's stresses came from a perceived stress source rather than from a real identifiable stress source. It is also difficult for me to accept the fact that when viewed objectively the specific incidents that the claimant testified to would be sufficient to be the basis for a stress claim."

■ A claim for a stress-related condition must be supported by proof of objective stress factors on the job. *McGarrah v. SAIF*, 296 Or 145, 675 P2d 159 (1983). The stress-causing work conditions must be "objective" in the sense that the conditions must be real, as opposed to imaginary; their medical effect on the worker, however, is measured by the worker's actual reaction, rather than by an objective standard of whether the conditions would have caused disability in the average worker. *SAIF v. Shilling*, 66 Or App 600, 675 P2d 1081 (1984). Here, even if claimant's reaction to the real events of a new city manager and changed work duties was psychotic, her condition would still be compensable, if she was reacting subjectively to real, potentially stress-causing events. In *Shilling*, the claimant sought compensation for a stress-related illness due to what she characterized as "overwork." SAIF argued that there was no objective evidence that claimant was overworked. We stated:

"* * * The question is not whether claimant's perception of overwork was accurate, or whether claimant was overworked as judged by a standard of what would constitute overwork to the average person on her job. The question is whether there were stress-causing pressures on her job that were 'real.' * * *" 66 Or App at 605.

In studying the record, we found that the claimant's job in

general had subjected her to real pressures. She was frequently required to tend the office alone and to deal with long lines of people, sometimes working through her breaks and lunch hour. We stated that her reaction to those real pressures was not a reaction to mere imaginary conditions.

"* * * That she was more susceptible to the conditions than others might be, that she characterized them as 'overwork' when someone else would not have or that they were more stressful for her does not preclude her claim." 66 Or App at 606.

Similarly, here, claimant's characterization of the events at work as stress and "harassment," rather than, for example, office tension and a reorganization of office duties, does not preclude her claim. The record contains uncontradicted evidence of many "real factors" which, when viewed objectively, are capable of producing stress: the new administrator took away many of claimant's responsibilities; he found fault in her work; he did not allow her to be paid for work done at home; he changed her job description; there was tension at the office. Claimant reacted to those events by feeling harassed and "undermined." Her reaction need not have been reasonable; it need not even have been rational. If claimant reacted to real events, she had a basis for a stress claim. *See Leary v. Pacific Northwest Bell,* 67 Or App 766, 680 P2d 5 (1984). Although the conditions of claimant's work may not have been sufficient to give rise to illness in the average person, we are persuaded by both the medical and the non-medical evidence that claimant has proved that the stress of those real events was the major contributing cause of her disability and of her need for treatment for a stress-related mental condition. *Cf. Leary v. Pacific Northwest Bell, supra* (we found that most of the conditions that allegedly produced stress were imaginary). Although claimant had experienced other stresses in her life, she had always been able to cope in the past. We find, from a preponderance of the evidence on *de novo* review, that it was the employment-related stress that brought about her disability.

The thrust of SAIF's argument is that the responsibilities which claimant felt were being taken from her by the new city administrator were not part of her job description as a billing clerk and that, therefore, stress caused by the taking

away of those responsibilities was not a risk of her employment. The argument is unpersuasive. The conditions of a person's employment are not defined solely by the job's description. If claimant was required, before the arrival of the new administrator, to perform tasks outside of her job description, and the record does not indicate otherwise, those tasks were part of her employment.

■ Claimant seeks the imposition of a penalty and attorney fees under ORS 656.262(10) for denial of her claim. Although SAIF's denial was wrong, we do not conclude that SAIF acted so unreasonably as to justify the assessment of a penalty. SAIF had in its possession, at the time of the denial, a report of Holland, who suggested that off-the-job stress might also have been responsible for claimant's condition. On the basis of that opinion, it had a legitimate doubt as to its liability. *Norgard v. Rawlinsons,* 30 Or App 999, 569 P2d 49 (1977).

Reversed and remanded for acceptance of the claim.

**BUTTLER, P. J.,** dissenting.

Because I agree with both the referee and the Board that claimant has not sustained her burden to prove that the on-the-job conditions, whatever they were, were *the* major contributing cause of her psychological problems, I would affirm. There are two parts to the problem.

First, assuming that the majority properly interprets *McGarrah v. SAIF,* 296 Or 145, 675 P2d 159 (1983), and *Leary v. Pacific Northwest Bell,* 67 Or App 766, 680 P2d 5 (1984), as holding that a claimant's unrealistic perception of events that occurred on the job justifies compensation if the misperceptions resulted in psychological disability, it misapplies the requirement that at-work conditions, when compared to off-work exposure, be the major contributing cause of claimant's disease. Here, although the medical evidence was conflicting, it was agreed that claimant was exposed to several off-the-job stresses, including difficulties with one of her children, flooding that surrounded her house and isolated her for days at a time each winter, and her interpersonal disfunction, evidenced by a history of six marriages. She is 35. Although claimant had seen four doctors, only one of them, Dr. Martin, came close to supporting her claim. However, he did not come

close enough: he stated that claimant's on-the-job exposure to stress was *a* major contributing cause of her psychological condition. The majority translates that opinion as stating that the on-the-job stress was *the* major contributing cause.

When there are several stress factors that contribute to a claimant's psychological problem, some of which are job-related and others not, a statement that the job-related stress is *a* major cause does not equate with its being *the* major cause. If we assume that each of the stress factors could be quantitatively assessed, it could be that three off-the-job stress factors each contributed to the extent of 20 percent and that the on-the-job stress contributed to the extent of 40 percent. Under those circumstances, it would be accurate to state that the on-the-job stress was *a* major contributing cause; however, it would not be accurate to state that the on-the-job stress (40 percent), as compared to the off-the-job stress (60 percent), was *the* major contributing cause.

The majority, apparently recognizing that the medical evidence is insufficient to carry claimant's burden, bridges the gap by stating that it relies on both the medical and non-medical evidence to conclude that the job-related stress was *the* major cause of claimant's psychological problems. It is not clear what non-medical evidence the majority relies on, unless it is the statement that "[a]lthough claimant had experienced other stress in her life, she had always been able to cope in the past," 78 Or App at 171. Not even claimant asserts that. Rather she concedes that she has had "prior emotional problems" but that they had been resolved at the time she worked for the city.

To the extent that the majority relies on lay testimony to support its conclusion that on-the-job stress was *the* major contributing cause of her psychological problems, it is in error. This kind of problem is not uncomplicated; it requires expert testimony, although the expert need not be a specialist in psychiatry. A medical doctor's testimony is competent to show the causal connection, *Barrett v. Coast Range Plywood,* 294 Or 641, 661 P2d 926 (1983), and in order to establish compensability one "must then look either to the degree or to the quantum of stress on the job as compared to that off the job." *Dethlefs v. Hyster Co.,* 295 Or 298, 308, 667 P2d 487 (1983). On this record, claimant has not sustained her burden

to show that the on-the-job stress, when compared to the off-the-job stress, was *the* major cause of her disability. Accordingly, and for this reason alone, I would affirm.

The second aspect of the problem is more problematical. We had found in *McGarrah v. SAIF,* 59 Or App 448, 651 P2d 153 (1982), that the on-the-job events of which the claimant had complained had actually occurred, that there was no evidence of stress off the job that contributed to his condition and that the medical evidence was undisputed that the job-related stress caused claimant's mental disorder. On those facts, we held that the claim was compensable. In *Leary v. Pacific Northwest Bell,* 60 Or App 459, 653 P2d 219 (1982), we held that claimant's work-related stress was the major contributing cause of his disability, applying the subjective test, concluding that, even though the work-related stress appeared largely to be his own reaction to his working conditions, the claim was compensable.

The Supreme Court granted review in both *McGarrah* and *Leary.* The court affirmed *McGarrah,* holding that we had properly applied the objective test; it remanded *Leary,* because we had applied the subjective test. On remand, 67 Or App 766, 680 P2d 5 (1984), applying the objective test, we found that some of the on-the-job stress causing conditions were real and that others were imagined. We stated that, when viewed objectively, the on-the-job conditions could produce stress, even though an average worker might not have responded adversely to them. Notwithstanding that observation, we held that the claim was not compensable, apparently because we concluded that most of the events and conditions of claimant's employment that produced stress were imagined and that claimant's stress appeared to result primarily from his perception of the way he was treated at work.

Although I confess some doubt, I believe that the Supreme Court's opinion in *McGarrah* and our opinion in *Leary* on remand require that, not only must the events complained of actually have occurred, but also that the claimant's perception of the events must have been within the realm of reason. Here, all that really occurred was that a new city manager took over and made some changes, including a change in claimant's job description. The new manager's reorganization of the city offices, the purpose for which he was

hired, apparently created tension in the office. That much is reasonably understandable. However, claimant's principal concern was that she was going to be "squeezed out" of her job. Although she said that some work was taken from her, she also complained that she did not have time to do her assigned work. There was no evidence that anyone sought to dismiss her. She felt nervous and sought tranquilizers, because she did not want to lose the contact with people which her job afforded her. Unless the majority is right in applying a subjective test, I do not think the record is sufficient to sustain this aspect of claimant's burden of proof.

Accordingly, I respectfully dissent.