Argued and submitted February 12, 2019, affirmed June 24, 2020

In the Matter of the Compensation of
Sherrill J. Vaughn, Claimant.

Sherrill J. VAUGHN,
*Petitioner,*

*v.*

MARION COUNTY,
*Respondent.*

Workers' Compensation Board
1603920; A167446

469 P3d 231

Claimant petitions for judicial review of a final order of the Workers' Compensation Board. In that order, the board upheld employer Marion County's denial of claimant's occupational disease claim for post-traumatic stress disorder (PTSD), because it concluded that the workplace team meeting, investigation, and interview that claimant contends caused her PTSD were "reasonable disciplinary" or "corrective" actions by the county, rendering her PTSD noncompensable under ORS 656.802(3)(b). On review, claimant contends that the board's determination was erroneous because (1) claimant was never disciplined, therefore the county's actions were not "disciplinary" or "corrective" under the statute; (2) the investigation was not "reasonable"; and (3) the board failed to expressly determine whether the county's actions were retaliatory. *Held*: For purposes of ORS 656.802(3)(b), an employment action can be "disciplinary" or "corrective" even if it does not lead to discipline, and the board did not err in finding that the county's investigation was reasonable. As for the board's failure to analyze separately whether the county's actions were retaliatory, any error on its part provided no basis for setting aside its order, because the board's findings of historical fact about the reasons for the county's investigation precluded the legal conclusion that the investigation was retaliatory.

Affirmed.

Jodie Anne Phillips Polich argued the cause for petitioner. Also on the briefs was Law Offices of Jodie Anne Phillips Polich, P.C.

H. Thomas Andersen argued the cause and filed the brief for respondent.

Before Powers, Presiding Judge, and Lagesen, Judge, and Brewer, Senior Judge.

LAGESEN, J.

Affirmed.

**LAGESEN, J.**

Claimant petitions for judicial review of a final order of the Workers' Compensation Board. In that order, the board upheld employer Marion County's denial of claimant's occupational disease claim for post-traumatic stress disorder (PTSD) after it concluded that the workplace team meeting, investigation, and interview that claimant contends caused her PTSD were "reasonable disciplinary [or] corrective *** actions" by the county, rendering her PTSD noncompensable under ORS 656.802(3)(b). On review, claimant contends that determination was erroneous for multiple reasons. We affirm.

The parties do not contest the board's findings of historical fact.[1] We therefore take the facts from the board's order, supplementing them with consistent facts from the record as necessary. *SAIF v. Tono*, 265 Or App 525, 526 n 1, 336 P3d 565 (2014).

Claimant worked as a deputy for the Marion County Sheriff's Department for nearly 24 years. The last two of those years she spent at the Marion County Work Center. There, she was partnered with Deputy Swendsen. Claimant and Swendsen did not get along. On three different occasions, claimant complained to her supervisor, Sergeant McDaniel, about Swendsen. She said that he swore at her on nearly a daily basis (claimant admitted that she swore back at him). Claimant also reported that Swendsen would get to work late and leave early. When McDaniel asked for specifics, though, such as the dates and times when Swendsen had been late or left early, claimant could not provide them. On the third occasion that claimant complained to McDaniel, she added one more grievance—that she was being "bullied and harassed" because she was an "older female."

Based on claimant's reports about Swendsen, McDaniel reviewed schedules, emails, and security footage. He determined that Swendsen did not arrive late or leave early from work without permission, contrary to claimant's

---

[1] The board adopted the administrative law judge's (ALJ) findings of fact and supplemented those findings with its own. For that reason, we treat the ALJ's findings of fact as the board's and refer to them as the board's.

allegation. Swendsen worked with the K-9 units, which were outside of the work center, and that meant that he was not always in the work center itself.

The first two times that claimant spoke with McDaniel, he just held a conversation with her. The third time, however, he turned the complaint over to the human resources (HR) department. Claimant's allegations that she was being bullied based on age and gender implicated two different classes protected by Title VII. Because of that, McDaniel was required to involve HR.

Waddell, an HR analyst, followed up with claimant in a one-on-one meeting. During that meeting, claimant was not able to provide specific examples of harassment based on age or gender, and Waddell determined that claimant's complaint did not implicate Title VII. Waddell also followed up with Swendsen. Swendsen was upset that claimant had reported that he had been coming to work late and leaving early, and denied that, but acknowledged that he had used profanity in addressing claimant.

McDaniel and Waddell sought to alleviate the tension between claimant and Swendsen and, with their consent, scheduled a team meeting. The meeting did not serve its intended purpose, and Waddell ended it because claimant was making inconsistent statements and Waddell thought claimant's various statements were harming her. Based on the number of inconsistent things that claimant said in the meeting, Waddell suspected that claimant's statements might be part of a pattern of untruthfulness, something that is of great concern in a law enforcement officer because law enforcement officers often have to testify in court. For that reason, she recommended that a professional standards investigation be conducted. Claimant, in turn, filed a second formal complaint against Waddell because of the team meeting.

Sergeant Peterson, an internal affairs officer, conducted the professional standards investigation. He interviewed Waddell and Swendsen and also collected evidence in the form of questionnaires completed by claimant's coworkers. During the initial stages of his investigation, he became aware that claimant had alleged to another officer

that McDaniel had physically poked her but had made inconsistent statements on that point as well, and he included that issue in his investigation. He became aware of other incidents as well, including alleged comments that claimant had made about another deputy's appearance, which broadened the scope of his investigation.

Later in the investigation, Peterson interviewed claimant. Claimant's union representative, Deputy McGowan, was also present in the interview. At the beginning of the interview, Peterson asked claimant if she was comfortable with him doing the interview, and she indicated that she was. The interview was roughly three hours and 23 minutes long. Claimant's inability to directly answer many of the interview questions contributed to its length. Because many of claimant's answers were not straightforward, Peterson, as claimant's superior officer, ordered her to answer some of the questions. Peterson's orders were aggressive and made the interview tense at times. McGowan would later described the interview this way:

> "I felt like [claimant] kept getting tripped up. There were several points in that interview where the topics were changed from one topic to the next and then back and around and around and around, I was having a very difficult time following that interview, just how it bounced from place to place to place, so I just felt like, yes, [Peterson] is correct, he can order [claimant] to answer the question, but the manner in which it was done, I just felt like it was—it was difficult."

During one of several breaks in the interview, McGowan pointed out to Peterson that he thought that Peterson's method of conducting the interview was questionable. That caused Peterson to "recognize[] that he had [claimant] pretty upset and he said he would try to kind of take it down a notch, and then he did after that point." Peterson's tone during most of the interview was conciliatory, understanding, and, at times, helpfully instructive for claimant. The interview went smoothly toward its end; claimant was conversational and animated, and, at one moment, everyone laughed as Peterson attempted to suppress a burp.

Upon completion of the investigation, Peterson concluded that claimant had been untruthful with respect to several of the investigated incidents. Marion County followed its "due process"[2] policy of providing claimant with copies of all materials pertaining to the investigation. Claimant's union later reviewed the interview. In its view, Peterson's interview "tactics were inappropriate and they needed to stop immediately."

The interview caused claimant a great deal of stress: Her "heart was racing," she had "blurry vision," she was "very upset," she cried during parts of it, and she "felt afraid." After the interview, claimant experienced "shooting pain in [her] arms and shoulders" and loss of range of motion in her shoulders.

Claimant had previously filed a workers' compensation claim in 2003, after she was assaulted by an inmate. For that claim, she was assessed by Dr. Silvey, a psychologist who specializes in PTSD. The accepted claim was "disabling neck strain and adjustment disorder with mixed anxiety and depressed mood."

Claimant saw Silvey again in 2016 after she began experiencing symptoms that were consistent with PTSD. Silvey identified claimant's interview with Peterson as the major contributing cause of claimant's PTSD, opining that it "triggered her PTSD from 2003." He clarified that the assault in 2003 caused claimant's PTSD, claimant was able to dissociate from that incident and work effectively in those intervening years, and the interview with Peterson in 2016—as well as the team meeting and other questioning leading up to the interview—triggered the PTSD.

Based on Silvey's diagnosis, claimant filed a workers' compensation claim for "mental health/stress (anxiety, Adjustment Disorder, PTSD) causing physical limitations bilaterally in upper extremities due to inflammation." The county denied her claim.

_____

[2] As Marion County defines it, "Due process is the opportunity for the employee to respond to the allegations or to respond to the results of the investigation."

Claimant requested a hearing before an administrative law judge (ALJ), and the ALJ affirmed the county's denial, concluding that ORS 656.802(3)(b) made claimant's PTSD not compensable because the claimed causal actions by the employer "were reasonable disciplinary, corrective or job performance evaluation actions within the meaning of ORS 656.802(3)(b)." Claimant then sought review before the board, which adopted and supplemented the ALJ's order and, ultimately, upheld employer's denial. In particular, the board rejected claimant's contentions that the county's actions (1) were not disciplinary or corrective within the meaning of ORS 656.802(3)(b) because claimant was not, ultimately, disciplined; (2) were not reasonable ones for various factual reasons; and (3) were not reasonable as a matter of law because, in claimant's view, they constituted an unlawful employment practice under ORS 659A.203 (1)(b)(A). On the third point, the board rejected claimant's argument on the ground that issues concerning whether an employment practice is unlawful are beyond the board's purview or jurisdiction. Claimant thereafter petitioned our court for judicial review of the board's decision. Before us, claimant largely reiterates the arguments she made before the board. We address them in turn.

At issue is the board's interpretation and application of ORS 656.802(3)(b). That statute provides that a worker seeking compensation for a mental disorder alleged to be caused by work conditions must prove that the causal work conditions do not fall within certain categories. Pertinent to this case, a worker must prove that the causal conditions were not reasonable disciplinary or corrective actions:

> "The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation *or reasonable disciplinary, corrective or job performance evaluation actions by the employer*, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles."

ORS 656.802(3)(b) (emphasis added).

Claimant first contends that the board erred in concluding that the team meeting, interview, and investigation were "disciplinary" or "corrective" actions within the

meaning of ORS 656.802(3)(b). Claimant's theory, as we understand it, is that the investigation (and its component parts) ultimately did not lead to any disciplinary or corrective action against her and, for that reason, is not embraced by the terms of the statute. The words "disciplinary" and "corrective" are not delegative terms,[3] so we review the board's order to determine whether it reflects an erroneous interpretation of those provisions and, if so, whether the correct interpretation requires the board to take a particular action. *Tono*, 265 Or App at 528; ORS 183.482(8)(a).

Here, the board's order reflects no legal error. It is undisputed that the county undertook its investigative actions because claimant's inconsistent statements gave rise to concerns about her truthfulness, something that falls easily within any common-sense understanding of the words "disciplinary" and "corrective." Dishonesty in an employee is often grounds for discipline and certainly grounds for correction. Beyond that, to the extent that claimant contends that investigations that do not ultimately lead to discipline cannot be considered disciplinary for purposes of the statute, we previously have upheld the board's determination that an investigation that "was a required prelude to any direct disciplinary action" was "disciplinary" for purposes of ORS 656.802(3)(b). *Crowley v. SAIF*, 115 Or App 460, 462-63, 839 P2d 236 (1992).[4] In the same case, we also upheld the board's alternative determination that, in all events, such an investigation qualifies as "corrective" under the statute.

---

[3] As we discuss further below, our standard of review of an agency's interpretation and application of a statute depends on the nature of the term or phrase at issue. We review an agency's interpretation and application of a non-delegative term for legal error under ORS 183.482(8)(a) "without deference to the agency's construction." *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014). By contrast, we review an agency's interpretation and application of a delegative term with deference under ORS 183.482(8)(b). That is, we review to determine whether "the agency's exercise of discretion" is "[o]utside the range of discretion delegated to the agency by law," or otherwise contrary to constitutions and statutes or inconsistent with agency rules, formally stated positions, or past practices. ORS 183.482(8)(b); *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228-30, 621 P2d 547 (1980).

[4] At the time we decided *Crowley*, the portion of ORS 656.802(3)(b) at issue in this case was contained in ORS 656.802(2)(b). Subsequent amendments resulted in the renumbering, but none of those amendments altered the statutory wording at issue in this case.

Accordingly, we reject claimant's comparable arguments to the contrary.

Claimant next challenges the board's determination that the county's actions were "reasonable" disciplinary or corrective measures within the meaning of ORS 656.802 (3)(b). "Reasonable" is a delegative term[5] so we review under ORS 183.482(8)(b) to determine whether the board's exercise of discretion in implementing that term is "within the range of discretion allowed by the more general policy of the statute." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980). As noted earlier, we conduct that review with deference because of the discretion that the legislature has given to the agency through the delegation. *Id.*; *Ogden Aviation v. Lay*, 142 Or App 469, 473, 921 P2d 1321 (1996) (reviewing board's interpretation and application of delegative term in ORS chapter 656 deferentially under ORS 183.482(8)(b)).

Examining the board's determination that the county's actions were reasonable ones, we are not able to conclude that the board's judgment about the reasonableness of the county's actions falls outside the boundaries of the board's discretion under ORS 656.802(3)(b). The board considered the basis for the investigation—claimant's suspected untruthfulness—and carefully examined the manner and scope of the investigation and its component parts, including the justification for Peterson's aggressive orders to claimant to answer questions—that claimant was not giving responsive answers to Peterson's questions.

In urging us to reach a different conclusion, claimant points to several aspects of the investigation process and the board's analysis that, in her view, require a conclusion that the county's actions were not reasonable. None of those arguments convince us that the board's determination about reasonableness falls outside of its discretion.

Claimant asserts that the county's investigation was "unprecedented" and should be deemed "*per se*" unreasonable

---

[5] "Examples [of delegative terms] include such terms as 'good cause,' 'fair,' 'undue,' 'unreasonable,' and 'public convenience and necessity.'" *CBI Services, Inc.*, 356 Or at 585 (quoting *Springfield Education Assn.*, 290 Or at 228).

for that reason. Taken to its logical conclusion, that argument asks us to conclude that, any time an employer takes novel steps to address a workplace discipline problem, we—and the board—are required to hold that the employer was acting unreasonably. That is contrary to the evident legislative intent behind ORS 656.802(3)(b) to curtail claims for mental disorders stemming from stressful, but otherwise reasonable and generally expected, workplace conditions, including disciplinary and corrective measures. *See, e.g.*, *Fuls v. SAIF*, 321 Or 151, 161-62, 894 P2d 1163 (1995). And the fact that the county's actions to address claimant's inconsistent statements may have been a first for the county provides no basis for displacing the board's assessment of reasonableness where the board examined carefully the purpose, manner, and scope of the county's actions in response to its reasonable belief that claimant had difficulties with truthfulness.

Claimant also argues that the board failed to give her own subjective responses to the interview greater weight in its reasonableness calculus, citing *Petersen v. SAIF*, 78 Or App 167, 170, 714 P2d 1108 (1986). But the board expressly addressed that point in its analysis. It determined that, even if "claimant's reaction to the interview was based on an accurate perception of real events," that ultimately did not change its view that the employer's actions as a whole were reasonable. Given the discretion delegated to the board on the question of whether an employer's actions are reasonable, it is not for us to say that the board had to give claimant's subjective responses more weight than it did.

It is also worth noting that *Petersen*, on which claimant relies, does not support her argument. At issue in that case was whether the stress-causing work conditions were "objective," that is, "real, as opposed to imaginary." 78 Or App at 170. Here, there is no dispute that claimant was subjected to stress-causing work conditions. The issue before us is whether those stress-causing work conditions were *reasonable*, which was not before us in *Petersen*. In fact, the statutory wording at issue in this case had yet to be enacted at the time *Petersen* was decided, which is an additional reason why that case is not helpful to claimant.

Claimant asserts that the board's reasonableness inquiry was incorrect because the board's order reflects that the board only considered "the disciplinary action as a whole," without regard to whether any particular steps within the employer's process were, in and of themselves, unreasonable in manner. Claimant posits that the board has taken an approach that essentially would immunize employers that take unreasonable actions in the context of a disciplinary proceeding from claims for mental disorders resulting from particular unreasonable actions. That, claimant contends, is not what the legislature intended by ORS 656.802(3)(b).

We don't disagree with claimant's point about the legislature's intentions. That is, we do not see a legislative intention to deny compensation for claims for mental disorders resulting from unreasonable disciplinary actions by an employer simply because those actions happened to fall in the midst of other reasonable disciplinary or corrective actions. Our decision in *Liberty Northwest Ins. Corp. v. Shotthafer*, also tends to support that understanding of ORS 656.802(3)(b). *See Liberty Northwest Ins. Corp. v. Shotthafer*, 169 Or App 556, 565-67, 10 P3d 299 (2000) (requiring the board to separately analyze distinct individual workplace conditions alleged to have contributed to a mental disorder to determine compensability and, in particular, whether nonexcluded factors are the major contributing cause of the mental disorder). And we acknowledge that the board's order, at first glance, is susceptible to the reading that claimant gives it. But claimant's argument overlooks the procedural fact that the board adopted the ALJ's order as its own and then supplemented it with its own analysis. The ALJ's order determined that claimant's "criticisms" of the underlying parts of the county's disciplinary actions—criticisms that the ALJ recognized were fair points—did not make the overall investigation or its individual components unreasonable: "Nevertheless, these criticisms do not make the entirety of the group meeting, the entirety of the February 23, 2016 interview or the entirety of the overall investigation unreasonable." The ALJ further determined, in particular, that Peterson's demeanor in the interview—the conduct of which claimant is most critical—"was, to a large extent, the result of his efforts to conduct a thorough interview and obtain

focused and accurate responses to specific questions." For that reason, we reject claimant's contention that the board failed to take into account the reasonableness of the individual components of the county's overall course of disciplinary action and, thus, fell outside the range of discretion delegated to it under ORS 656.802(3)(b).

Claimant's final argument is that the county's disciplinary action constituted an unlawful employment practice under Oregon's whistleblower statute, ORS 659A.203 (1)(b)(A).[6] She argues that the investigation was retaliatory and therefore unreasonable as a matter of law, and that the board erred when it failed to determine for itself whether the county's conduct violated ORS 659A.203(1)(b)(A). She clarified at oral argument that, even if the board does not have jurisdiction to decide unfair labor practices, those legal standards would be relevant for the board to consider in evaluating reasonableness. The county responds that whether the employment actions were unlawful was not for the board to decide.

We agree with claimant that, if the county's disciplinary actions were an effort to retaliate against her for bringing to light a regulatory violation by the county, the board would act outside of its discretion by determining those actions to be reasonable. However, claimant acknowledged at oral argument that she had submitted all of the relevant evidence on reasonableness to the board, so whether or not the board had jurisdiction to evaluate claimant's claim under ORS 659A.203(1)(b)(A), any evidence of unlawful activity on the county's part was considered and weighed

---

[6] The board addressed claimant's assertion that the county's employment actions were unlawful in a footnote, quoted here in full:

"We decline to go beyond the confines of ORS Chapter 656 and consider employment statutes (ORS Chapter 659A) or 'personnel administration fundamentals' in determining whether the employer's investigation was a reasonable disciplinary, corrective or job performance evaluation action under ORS 656.802(3)(b). *See Kenneth A. Meyer*, 50 Van Natta 2302, 2304 (1998) (issues concerning whether an employer's action in terminating a claimant's employment was unlawful are not within the purview of the workers' compensation law or appropriately considered in determining whether a worker was terminated for a work rule violation or other disciplinary reasons under ORS 656.325(5)(b)); *Glenda Jensen*, 50 Van Natta 1074, 1075 n 1 (1998) (no jurisdiction to consider matters arising outside of Chapter 656, including employment reinstatement disputes under Chapter 659)."

in the board's reasonableness evaluation. Assuming that, as claimant argues, the board's belief that it had no jurisdiction to consider claimant's retaliation claim was erroneous, claimant has not demonstrated that "such an error would compel any different action by the board." *Shank v. Board of Nursing*, 220 Or App 228, 237-38, 185 P3d 532 (2008) (rejecting the petitioner's assignment of error because she failed to challenge all grounds for the agency's discovery ruling, leaving proper grounds for the ruling even if her assignment of error were found to have had merit); *see also Steele v. Water Resources Commission*, 248 Or App 229, 239-40, 273 P3d 243 (2012) ("If a correct interpretation of the law would not or could not affect the agency's action, we have no statutory authority to do anything to the order on review."). That is because the board's findings of historical fact about the reasons for the investigation would preclude the legal conclusion that the investigation was retaliatory. The board found that the county undertook its investigation of claimant because of founded concerns about her truthfulness after claimant made inconsistent statements on multiple occasions. In view of those findings, any error in the board's failure to analyze separately whether the county's actions were retaliatory in violation of ORS 659A.203(1)(b)(A) provides no basis for us to set aside the board's order.

Affirmed.