Argued and submitted June 3, 2021, affirmed January 20, 2022

## MULTNOMAH COUNTY,
*Petitioner,*

*v.*

## MULTNOMAH COUNTY
## CORRECTIONS DEPUTY ASSOCIATION,
*Respondent.*

### Employment Relations Board
### UP00319; A174035

505 P3d 1037

Petitioner Multnomah County seeks judicial review of a reconsideration order issued by the Employment Relations Board (board). In that order, the board concluded that, under Oregon's Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, a public employer has a duty to bargain in good faith when a union initiates midterm bargaining over mandatory subjects not specifically covered by the parties' agreement, even in the absence of a unilateral change proposed or made by the employer. In its sole assignment of error, the county argues that PECBA does not impose the duty articulated in the board's order. *Held*: The board's interpretation of the phrase at issue in ORS 243.650(4) was entitled to deference, because it turned on the meaning of delegative terms. And—under that deferential standard of review, and in light of the more general policy underlying PECBA—the board's conclusion was consistent with the range of discretion allowed by that policy.

Affirmed.

David Landrum argued the cause and filed the briefs for petitioner.

Aruna A. Masih argued the cause and filed the brief for respondent.

Lory J. Kraut and Fallon Niedrist filed the brief *amici curiae* for League of Oregon Cities, Association of Oregon Counties, and Oregon Public Employer Labor Relations Association.

Jason M. Weyand, Danielle Holmes, and Tedesco Law Group filed the brief *amici curiae* for Oregon Schools Employees Association, American Federation of State, County and Municipal Employees, Council 75, Oregon Education Association, Oregon American Federation of Labor–Congress of Industrial Organizations, Oregon State

Firefighters Council, Teamsters Local 223, Service Employees International Union, Local 503, and American Federation of Teachers Oregon.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Petitioner Multnomah County seeks judicial review of a reconsideration order issued by the Employment Relations Board (board). In that order, the board concluded that, under Oregon's Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, a public employer has a duty to bargain in good faith when a union initiates midterm bargaining over mandatory subjects not specifically covered by the parties' agreement, even in the absence of a unilateral change proposed or made by the employer. In its sole assignment of error, the county argues that PECBA does not impose the duty articulated in the board's order. We affirm.[1]

## BACKGROUND

The parties "do not contest the board's findings of historical fact," so we "take the facts from the board's order, supplementing them with consistent facts from the record as necessary." *Vaughn v. Marion County*, 305 Or App 1, 2, 469 P3d 231 (2020).

The association filed a complaint with the board, alleging that the county had committed an unfair labor practice by refusing to bargain in good faith with the association about "mandatory safety issues." The board determined that the county had not committed an unfair labor practice and dismissed the association's complaint.

The association then filed a request for reconsideration, and the county joined in that request, asking the board to clarify, among other points, "whether the County

---

[1] Regarding the basis for review in this case, the association contends that, "under ORS 183.480, any party to an agency proceeding is entitled to judicial review of the final order," but that "[u]nder ORS 663.220, however, only a 'person aggrieved by a final order of [the board] *** may obtain review of the order in the Court of Appeals'" and that "the county failed to meet its burden to establish that it is an 'aggrieved'" person. To the extent that the association contends that the county must satisfy both the "any party" requirement in ORS 183.480(1) and the "aggrieved person" requirement in ORS 663.220 to obtain review in this case, we disagree. Instead, we proceed on the understanding that, in this case, the county is "a party to an agency proceeding" and is therefore entitled to review under ORS 183.480(1). *See Kellas v. Dept. of Corrections*, 341 Or 471, 482, 145 P3d 139 (2006) ("[A] party to an agency proceeding (other than the agency itself) has standing under ORS 183.480(1) to seek judicial review by that fact alone, without further showing of interest." (Internal quotation marks omitted.)).

has a duty to engage in midterm bargaining about the safety issues raised by the Association." The board granted the parties' joint request and held a hearing. The county argued that it had no duty to engage in midterm bargaining where it had not proposed or made any unilateral change concerning or affecting a mandatory subject. The association argued that it had the right to initiate midterm bargaining over mandatory safety issues and should not have to wait until the next round of successor bargaining to address those issues.

Thereafter, the board issued a reconsideration order, explaining that the parties' dispute "boils down to whether the County has a duty to bargain when the Association requests midterm bargaining over a mandatory subject not specifically covered by the parties' agreement, even in the absence of a unilateral change proposed or made by the County." The board then concluded that "the answer to that question is yes, the County has [that] duty."[2] In reaching that conclusion, the board's discussion centered on "the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining." ORS 243.650(4).[3]

---

[2] In a concurring opinion, one ERB member joined in the majority's conclusion that the county had not committed an unfair labor practice, but noted that "the parties' request for clarification implicates significant legal questions that were not briefed or argued," and therefore "decline[d] to conclude that a public employer has a duty to bargain under PECBA in response to a union-initiated midterm demand to bargain on a mandatory subject not covered by the contract."

[3] ORS 243.650(4) provides, in its entirety:

"'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining, to meet and confer in good faith in accordance with law with respect to any dispute concerning the interpretation or application of a collective bargaining agreement, and to execute written contracts incorporating agreements that have been reached on behalf of the public employer and the employees in the bargaining unit covered by such negotiations. The obligation to meet and negotiate does not compel either party to agree to a proposal or require the making of a concession. This subsection may not be construed to prohibit a public employer and a certified or recognized representative of its employees from discussing or executing written agreements regarding matters other than mandatory subjects of bargaining that are not prohibited by law as long

Preliminarily, the board noted that it had "unequivocally answered this question in *Redmond* [*Educ. Ass'n v. Redmond Sch. Dist. No. 2J*, 1 PECBR 41, *aff'd*, 19 Or App 212, 527 P3d 143 (1974)]," where it had relied on *Nat'l Labor Relations Bd. v. Jacobs Mfg. Co.*, 196 F2d 680, 684 (2d Cir 1952)—a federal case interpreting the National Labor Relations Act—to support the proposition that "an employer has a duty to bargain in good faith when a union initiates midterm bargaining on mandatory subjects not specifically covered by the parties' agreement." The board then said that "even in the absence of *Redmond*, we would reach the same conclusion" and proceeded with its analysis.

The board began by explaining that "'collective bargaining' is, by definition, mutual," under the first clause of ORS 243.650(4), which provides:

"'Collective bargaining' means the performance of the *mutual* obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining[.]"

(Emphasis added.) The board reasoned that, to interpret that provision "as giving only a public employer, and not a labor organization, the right to initiate bargaining during the term of the contract, we would have to ignore the 'mutual' element of the statutory definition of collective bargaining."

---

as there is mutual agreement of the parties to discuss these matters, which are permissive subjects of bargaining."

This case involves the "mutual obligation" to collectively bargain and "meet at reasonable times and confer in good faith" as provided in ORS 243.650(4) (defining "collective bargaining"). Though a statute's "drafter should take care not to place substantive matter in a definition," Office of Legislative Counsel, *Bill Drafting Manual* § 7.2 (2018), substantive matter nevertheless appears within definitions. *See, e.g.*, *id.* (noting workers' compensation statutory definitions, ORS 656.005, include several examples of "substance entwined with definitions"). This is another such case; ORS 243.650(4) defines "collective bargaining" and operates as a substantive provision creating rights and obligations concerning collective bargaining. *Cf. Long v. Storms*, 52 Or App 685, 687, 629 P2d 827 (1981) ("Substantive law is that part of the law which creates, defines, and regulates rights[.]"). And, looking in particular at the board's analysis in its reconsideration order, as well as the parties' briefing, ORS 243.650(4) is the focus of the bargaining obligation at issue. Consequently, our analysis focuses primarily on the bargaining obligations provided in ORS 243.650(4).

The board further explained that the policy underlying PECBA was "intended to bring the parties into a collective bargaining atmosphere of equality of bargaining power." (Internal quotation marks omitted.) The board reasoned that to "allow public employers to retain the right to raise new issues when they arise midterm, but deny that same right to public employee unions, would provide an unfair advantage and create a bargaining inequality that conflicts with [PECBA's] purposes."

In addition, the board noted that PECBA had been modeled after the National Labor Relations Act (NLRA), under which "unions and employers have always had an equal right to initiate midterm bargaining." Again citing *Jacobs*, 196 F2d 680, the board said, "[T]he rule that unions have the right to initiate midterm bargaining was already well-settled under the NLRA when the legislature modeled PECBA on that statute" in 1973.

Ultimately, the board concluded that "the collective bargaining rights and duties that PECBA confers on *both* parties, not just an employer, include the right to initiate midterm collective bargaining" over "mandatory subjects not specifically covered by the parties' existing agreement," and that "permitting both parties to exercise that right advances PECBA's policies and purposes." (Emphasis in original.)

On review, the county argues that the board erred in construing PECBA, because "PECBA does not impose a duty on public employers to bargain midterm over subjects not covered in a CBA where the employer neither makes nor proposes any change to the status quo." In response, the association argues that the board's "conclusion regarding the 'mutuality' of the 'collective bargaining' rights and duties provided for in the PECBA should be upheld because it is consistent with not only the *Redmond* case and pre-PECBA NLRA cases, but also the text, context, and legislative history of ORS 243.650(4)."

In addition, *amici* for both the county and the association submitted briefs in support of the parties' respective positions. *Amici* for the county argue, among other points,

that the board's decision "will disrupt and impede efficient operation of government entities" and "undermines rather than promotes harmonious and cooperative" labor relations. *Amici* for the association contend, among other points, that the board's order is "consistent with the clear text of the statute" and "previous [board] and private sector precedent," and that it "advances the purposes and policies underlying the PECBA."

## STATUTORY TERMS & STANDARD OF REVIEW

We begin by determining our standard of review. The parties' arguments center on the board's conclusion about the collective bargaining obligations imposed by PECBA. As noted above, the board reached that conclusion, in part, by relying on ORS 243.650(4). Thus, this case presents a question about "the intended meaning of a statute," which "ultimately is a question of law." *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014). But, "depending on the nature of the statutory term at issue, an administrative agency's construction of a statute nevertheless may be entitled to a measure of deference." *Id.*

"Whether the agency's construction is entitled to such deference depends on whether the disputed term is exact, inexact, or delegative." *Id.* "'Exact terms' impart relatively precise meanings, and their applicability in a particular case involves only agency factfinding." *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353, 15 P3d 29 (2000) (citing *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980) (illustrating exact terms, "*e.g.*, 21 years of age, male, 30 days, Class II farmland, rodent, [or] Marion County")). "Inexact terms are less precise and are open to various interpretations, but they embody a complete expression of legislative meaning." *Arvidson v. Liberty Northwest Ins. Corp.*, 366 Or 693, 700, 467 P3d 741 (2020) (holding that "find" is an inexact term, as used in the phrase "finds that * * * all or part of the compensation awarded * * * should not be reduced or disallowed" (internal quotation marks omitted)). "Delegative terms express incomplete legislative meaning that the agency is authorized to complete"—*e.g.*, "'good cause,' 'fair,' 'undue,' 'unreasonable,' and 'public convenience and necessity.'"

*CBI Services, Inc.*, 356 Or at 585 (internal quotation marks omitted).

Here, the phrase at issue is "the *mutual obligation of a public employer and the representative * * * to meet at reasonable times* and confer in *good faith* with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining[.]" ORS 243.650(4) (emphases added). Some components of that phrase are statutorily defined. *See* ORS 243.650(7), (20) (defining "employment relations" and "public employer"). But the larger phrase itself is not exact—particularly in light of the undefined term "mutual obligation" and the phrase "meet at reasonable times and confer in good faith"—because "it lacks a meaning so precise as to require only factfinding." *CBI Services, Inc.*, 356 Or at 589. Thus, we must initially determine whether the phrase "the mutual obligation of a public employer and the representative * * * to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining" is inexact or delegative.

In determining whether a given term is delegative, the Supreme Court "has taken several considerations into account." *Id.* at 590 (collecting cases). First, the court "often has compared a disputed term to those the court already has concluded are delegative in nature." *Id.* Second, "the court has asked whether the disputed term is defined by statute or instead is readily susceptible to multiple interpretations." *Id.* Third, "the court has inquired whether the term in contention requires the agency to engage in policy determination or make value judgments." *Id.* Finally, the court has "looked to the larger context of the statute in dispute, to determine whether other provisions suggest that the legislature did or did not intend a term to be regarded as delegative." *Id.*

With those considerations in mind, we turn to the phrase at issue here—*i.e.*, "the mutual obligation of a public employer and the representative * * * to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining."

First, that phrase bears some similarity to one this court has already concluded is delegative—*viz.*, "bargain collectively in good faith with the exclusive representative," as used in ORS 243.672(1)(e). *Olney School Dist. 11 v. Olney Education Assn.*, 145 Or App 578, 582, 931 P2d 804 (1997) ("By using the phrase 'bargain collectively in good faith with the exclusive representative,' in ORS 243.672(1)(e) [(providing that employer's refusal to bargain collectively is unlawful labor practice)], the legislature expressed a general legislative policy and delegated to ERB the responsibility to complete that policy."); *see also Lincoln Cty. Ed. Assn. v. Lincoln Cty. Sch. Dist.*, 187 Or App 92, 98, 67 P3d 951 (2003) ("[T]he Legislative Assembly has delegated broad discretion to ERB in interpreting and deciding how to implement ORS 243.672(1)(e)."). Additionally, that phrase includes the terms "reasonable times" and "good faith," which are similar to terms we have already determined are delegative. *See Vaughn*, 305 Or App at 8 ("'Reasonable' is a delegative term.");[4] *Clackamas County Employees' Assn. v. Clackamas County*, 243 Or App 34, 39, 259 P3d 932 (2011) ("Examples of delegative terms include 'good faith[.]'"). Second, as the parties' arguments demonstrate, that phrase is susceptible to multiple interpretations, and "mutual obligation"—a term on which the board placed particular emphasis—along with "reasonable times" and "good faith" are not defined in PECBA. Third, the phrase also required the board to make a value judgment or policy determination about what sort of "mutual obligation" best comports with the values and

---

[4] We understand "reasonable times" to be a delegative term in this context, in part, because we have held similar terms to be delegative in other contexts. *See, e.g., Vaughn*, 305 Or App at 8 ("reasonable" in ORS 656.802(3)(b) is delegative); *Nulph v. Board of Parole*, 279 Or App 652, 381 P3d 94 (2016), *rev dismissed*, 361 Or 351 (2017) ("reasonable cause" in ORS 144.228(1)(c) is "delegative in nature"); *CBI Services, Inc.*, 356 Or at 585 ("reasonable diligence" in ORS 654.086(2) is delegative); *Oregon Assn. of Rehab. Prof. v. Dept. of Ins.*, 99 Or App 613, 616, 783 P2d 1014 (1989) ("reasonable" in ORS 656.340(9)(d) "is a delegative term"); *Sayers v. Employment Division*, 59 Or App 270, 279, 650 P2d 1024 (1982) ("reasonable time" in ORS 657.875 is delegative). However, "reasonable" might be a different type of term in a different context, because "[d]etermining the nature of a term, whether it is exact, inexact, or delegative, necessarily depends on the context in which the term is used." *Meier v. Salem-Keizer School Dist.*, 284 Or App 497, 506, 392 P3d 796, *rev den*, 362 Or 175 (2017)); *see also J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197, 131 P3d 162 (2006) (concluding that "reasonably necessary" is not delegative, but inexact, given additional, qualifying statutory wording in ORS 632.940).

policies undergirding PECBA, what are "reasonable times" to meet, and what "good faith" conferral requires. Fourth and finally, nothing in PECBA's other provisions suggests to us that the phrase was intended to be something other than delegative in nature.

For those reasons, we conclude that the board's interpretation of the larger phrase at issue in ORS 243.650(4) is entitled to deference, because it turned on the meaning of delegative terms, including "mutual obligation" and the phrase "meet at *reasonable times* and confer in *good faith* with respect to employment relations" (emphasis added), the latter of which expresses a general legislative policy and delegates to the board the responsibility to complete that policy by specifying what constitutes bargaining collectively at reasonable times and in good faith.

"Appellate courts review an agency's interpretation of delegative terms to ensure that the interpretation is within the range of discretion allowed by the more general policy of the statute." *CBI Services, Inc.*, 356 Or at 585 (internal quotation marks omitted); *see also Springfield Education Assn.*, 290 Or at 229 ("[T]he review function of the court is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute.").

## ANALYSIS

"Where a statutory term is delegative, the agency must determine the legislative policy underlying the statute and construe and apply the term consistently with that policy." *Bergerson v. Salem-Keizer Sch. Dist.*, 194 Or App 301, 311, 95 P3d 215 (2004), *aff'd*, 341 Or 401, 144 P3d 918 (2006). "Determining the general policy expressed in the statute is itself a matter of statutory construction." *Id.* (internal quotation marks omitted). Accordingly, we "apply the interpretive principles established by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993)," and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (examining statutory text, context, and legislative history at the first step, followed by general maxims of construction if uncertainty remains). *Bergerson*, 194 Or App at 311. At "the first level of interpretation, we consider among other

things, prior judicial interpretations of the relevant statutes," *id.*, which we consider dispositive here.

The Supreme Court discussed the policies underlying PECBA in *AFSCME Council 75 v. City of Lebanon*, 360 Or 809, 815-18, 388 P3d 1028 (2017). Citing ORS 243.656—which explicitly states the policy considerations underlying PECBA—the Supreme Court noted that the "Oregon legislature [has] declared that the purposes of PECBA are to 'obligate public employers, public employees, and their representatives to *enter into collective negotiations with willingness* to resolve grievances and disputes relating to employment relations.'" (Emphasis added.) Regarding PECBA's underlying policy, the legislature also declared,

"(1)   The people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employees;

"(2)   Recognition by public employers of the right of public employees to organize and full acceptance of the principle and procedure of collective negotiation between public employers and public employee organizations can alleviate various forms of strife and unrest. ***; [and]

"(3)   *** [P]rotection by law of the right of employees to organize and negotiate collectively safeguards employees and the public from injury, impairment and interruptions of necessary services, and removes certain recognized sources of strife and unrest *** by establishing greater equality of bargaining power between public employers and public employees."

ORS 243.656(1) - (3). The Supreme Court concluded that the "legislature's statement of policy thus demonstrates an intent for PECBA *to apply broadly in favor of public employees' rights to organize and bargain collectively.*" *AFSCME Council 75*, 360 Or at 823 (emphasis added).

The Supreme Court also observed that, "[b]asically, in enacting PECBA, the legislature extended to public employees in Oregon the same benefits and protections that federal law had long afforded to employees in the private sector under the National Labor Relations Act (NLRA)."

*AFSCME Council 75*, 360 Or at 816. The court explained that the "overarching purpose of the NLRA *** was to protect employees against employer interference with their organizational rights" and that, to accomplish that purpose, "the NLRA conferred on employees a 'triad of rights,'" including "the right to bargain collectively." *Id.* The court further explained that, in "many respects, PECBA was patterned after the NLRA," and that "PECBA and the NLRA both express *policies of promoting collective bargaining.*" *Id.* at 817-18 (emphasis added).

Relatedly, the Supreme Court said that, because "the legislature largely modeled Oregon's statute after the federal one," it would seek guidance in understanding PECBA by "consider[ing] federal cases interpreting the NLRA that were in existence at the time that the legislature enacted PECBA" in 1973. *Id.* at 824. As relevant here, one such federal case—which was cited by the board in its reconsideration order—is *Nat'l Labor Relations Bd. v. Jacobs Mfg. Co.*, 196 F2d 680 (2d Cir 1952).

In *Jacobs*, one issue before the court was whether the employer had a duty to bargain when the union requested midterm bargaining over pensions—a mandatory subject not specifically covered in the parties' existing agreement. *Id.* at 683. The employer argued, in essence, that it had no duty to bargain over pensions during "the term of the contract," because that subject had not been "expressly reserved for further negotiations in a reopening clause." *Id.* at 683-84. The *Jacobs* court rejected that argument, explaining that no provision of the NLRA "relieves an employer of the duty to bargain as to subjects which were neither discussed nor embodied in any of the terms and conditions of the contract," and that "the general purpose of the [NLRA] *** is to require employers to bargain as to employee demands *whenever made.*" *Id.* at 684 (emphasis added). "Therefore," the *Jacobs* court concluded, "it was the [employer's] statutory duty to bargain on the subject of pensions." *Id.*; *see also N. L. R. B. v. Niles-Bement-Pond Co.*, 199 F2d 713, 714 (2d Cir 1952) (citing *Jacobs*, 196 F2d 680, and holding that, where existing agreement did not cover remunerative "bonuses," NLRA required the employer to bargain midterm "*when the union requested it to do so*" (emphasis added)); *Nat'l Treasury*

*Emps. Union v. Fed. Labor Relations Auth.*, 810 F2d 295, 299 (DC Cir 1987), *abrogated on other grounds by Nat'l Fed'n of Fed. Emps., Local 1309 v. Dept. of Interior*, 526 US 86, 119 S Ct 1003, 143 L Ed 2d 171 (1999) (citing *Jacobs*, 196 F2d at 684, and explaining that, under the NLRA, "there is clear and long-established precedent that *the duty to bargain extends also to midterm proposals initiated by either management or labor*," and that "it is undisputed that the *Jacobs* case is fully integrated into the fabric of labor law" (emphasis added)).

The foregoing discussion demonstrates that the general policy underlying PECBA includes fostering harmonious and cooperative relations between public employers and organized labor; requiring public employers' "recognition" and "full acceptance" of the "principle and procedure" of collective bargaining; establishing an "equality of bargaining power" between the parties; and requiring employers to bargain over a union's demands "whenever made," including midterm.[5]

In light of that policy, and in light of our deferential standard of review in this case, we hold that the board's conclusion under ORS 243.650(4)—*i.e.*, that "the County has a duty to bargain when the association requests midterm bargaining over a mandatory subject not specifically covered by the parties' agreement, even in the absence of a unilateral change proposed or made by the county"—is consistent with the range of discretion allowed by the more general policy underlying PECBA.

In seeking a different result, the county contends that the board's conclusion is incorrect, because the 1995 legislature amended the definition of "collective bargaining" in ORS 243.650(4) by passing Senate Bill (SB) 750 (1995), thereby "limit[ing] the obligation of government employers to bargain over midterm demands by a union to 'any dispute

---

[5] That point should not be understood to mean that an employer would be required to bargain over a subject as to which a union has waived its bargaining rights. *See, e.g., Portland Fire Fighters' Assn. v. City of Portland*, 302 Or App 395, 402, 461 P3d 1001 (2020) ("[A] party may waive its right to bargain through clear and unmistakable language in a contract, bargaining history, or the party's action or inaction.").

concerning interpretation or application of a collective bargaining agreement.'" (Quoting, in part, ORS 243.650(4).)[6]

Although the county is correct that ORS 243.650(4) was amended in 1995, we disagree that those amendments undermine the board's conclusion. For one, the specific text in ORS 243.650(4) on which the board relied in its order—*i.e.*, "the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations"—was not affected by the 1995 amendments. Before 1995, ORS 243.650(4) (1993), *amended by* Or Laws 1995, ch 286, § 1, provided, in relevant part:

> "'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. ***"

After the legislature amended it in 1995, ORS 243.650(4) provided, in relevant part:

> "'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations[*, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party*] **for the purpose of negotiations concerning mandatory subjects**

---

[6] With respect to those 1995 amendments, the county makes three additional arguments: (1) the 1995 amendments created a "new, expedited midterm bargaining process" under ORS 243.698 (providing for expedited 90-day bargaining process for employer-proposed midterm changes), but "[t]he legislature did not include any provision for union-initiated midterm demands to bargain"; (2) the 1995 amendments limited midterm renegotiations to "words or sections of the agreement declared 'invalid'" pursuant to ORS 243.702 (providing for expedited 90-day bargaining process when contract provision is declared invalid or cannot be performed); and (3) the 1995 amendments "resulted in a diminished 'textual connection' between PECBA and the NLRA," which "undermines the basis of the [board's] reliance on" federal case law interpreting the NLRA. We reject those additional arguments without further discussion.

**of bargaining, to meet and confer in good faith in accordance with law with respect to any dispute concerning the interpretation or application of a collective bargaining agreement, and to execute written contracts incorporating agreements that have been reached on behalf of the public employer and the employees in the bargaining unit covered by such negotiations**. \*\*\*"

Or Laws 1995, ch 286, § 1 (boldface, brackets, and italics in original).

As shown by that statutory text, although the second and third clauses of that definition were amended in 1995, the text in the first clause on which the board relied was not.[7] The board was aware of this fact and addressed those 1995 amendments in its order, stating, among other points, that "SB 750 left *unchanged* the first part of that definition, which is the portion that is material to our decision," and that "we find no evidence of a legislative intent [in SB 750] to eliminate the substantive right of unions (but not employers) to initiate midterm collective bargaining." (Emphasis in original.) Thus, the board's conclusion did not rely on any text in ORS 243.650(4) affected by the 1995 amendments; none of the text on which the board relied was amended or repealed, nor was any new text added to the part of that definition material to the board's analysis. Moreover, the county does not explain how the 1995 amendments that affected *other* parts of ORS 243.650(4) would, nevertheless, undermine the board's reliance on the *unamended* part of that statute. Consequently, we are not persuaded that the SB 750 amendments to ORS 243.650(4) limited a public employer's collective bargaining obligations in the way that the county contends.

---

[7] The parties assert, and we agree, that the definition of "collective bargaining" in ORS 243.650(4) comprises three separate duties set forth in three separate clauses:

- the duty to meet at reasonable times and confer in good faith with respect to employment relations (first clause);

- the duty to meet and confer in good faith in accordance with law with respect to any dispute concerning the interpretation or application of a collective bargaining agreement (second clause); and

- the duty to execute written contracts incorporating agreements that have been reached on behalf of the public employer and the employees in the bargaining unit covered by such negotiations (third clause).

In sum, because the board's conclusion regarding the county's collective bargaining obligations under ORS 243.650(4) is consistent with the range of discretion allowed by the more general policy underlying PECBA, the board's reconsideration order is affirmed.

Affirmed.